CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
November 24, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **KHALIL SALAHUDDIN,** | ) | **Case No. 7:25-cv-00673** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **VIRGINIA DEPARTMENT OF** | ) | |
| **CORRECTIONS, et al.,** | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION

Khalil Salahuddin, a Virginia inmate proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983, alleging that the defendants did not accommodate his request to participate in the Ramadan fast and other religious activities, in violation of his rights to free exercise of his Muslim religious beliefs under the First Amendment and the Religious Land Use and Institutionalized Persons Act, (RLUIPA), 42 U.S.C. § 2000cc-1, *et seq*. His Amended Complaint names three defendants: Virginia Department of Corrections (VDOC), River North Correctional Center Institutional Programs Manager, S. Snow and River North Correctional Center Head Counselor, Ms. King. Salahuddin requests injunctive relief from VDOC, in the form of changing VDOC policy regarding religious activities for transferring inmates. He also seeks "$10,000 from each defendant both jointly & severally for compensatory damages from violation of 1st Amd. Rights independent of emotional & mental injury & violation of RLUIPA … & $10,000 for general & punitive damages from each defendant both jointly and severally."

Defendants filed a partial Motion to Dismiss (Dkt. 22), and a partial Motion for Summary Judgment (Dkt. 25). For the reasons that follow, I conclude that Defendants' partial Motion to Dismiss must be granted. I also find that Salahuddin did not exhaust his administrative

remedies, as required, prior to filing suit and as such, I will grant defendants' partial motion for summary judgment.

## I. BACKGROUND

In his Amended Complaint, Salahuddin identifies his claims against each Defendant, but does not number them. I liberally construe the Complaint as alleging six claims:

**Claim 1:** VDOC violated Salahuddin's First Amendment rights by enforcing VDOC Operating Procedure 841.3 – Inmate and CCAP Probationer/Parolee Religious Programs, which provides a designated period once each quarter for enrollment in religious activities.

**Claim 2:** Defendant VDOC violated Salahuddin's RLUIPA rights by enforcing VDOC Operating Procedure 841.3, which provides a designated period once each quarter enroll in religious activities.

**Claim 3:** Defendant S. Snow violated Salahuddin's First Amendment rights by failing to place Salahuddin on the Ramadan master pass list in January 2025 through April 2025.

**Claim 4:** Defendant S. Snow violated Salahuddin's RLUIPA rights by failing to place Salahuddin on the Ramadan master pass list in January 2025 through April 2025.

**Claim 5:** Defendant Ms. King violated Salahuddin's First Amendment rights by forging a "Request to Attend Religious Activity" Form.

**Claim 6:** Defendant Ms. King violated Salahuddin's RLUIPA rights by forging a "Request to Attend Religious Activity" Form.

## II. FACTS

Salahuddin's claims arose while incarcerated at River North Correctional Center. Sometime in early or mid-January 2025, Salahuddin transferred into River North Correctional Center. According to VDOC Operating Procedure 841.3, "an open enrollment period of (2)

weeks shall be provided at least once each quarter to allow offenders their selection of religious activities." Dkt. 5. However, the same policy "does not allow an inmate who has arrived after 'open enrollment' that same (2) week period to change or select a religious activity." *Id*. As a result of the policy, VDOC "substantially burdened [Salahuddin's] right to religious exercise by stopping [sic] him from being placed on the master pass list in order to fast during the holy month of Ramdan…" *Id*. Salahuddin did not submit any information regarding any grievance(s) he filed with RNCC regarding VDOC OP 841.3 and not being placed on the pass list for Ramadan in 2025.

Salahuddin claims that on January 19, 2025, in accordance with VDOC OP 841.3, he submitted "a request form to participate in Ramadan fasting." *Id*. However, Institutional Programs Manager, S. Snow "failed to place [Salahuddin] on the Ramadan master pass list on 1/28/2025, 2/10/2025, & March through April 2025," in violation of his First Amendment and statutory RLUIPA rights.

Salahuddin further alleges that RNCC's Head Counselor Ms. King "forged a 'Request to Attend Religious Activities' form on 1/16/2025 stating that [Salahuddin] did not want to participate in religious activity." *Id*. Salahuddin contends that Ms. King filled out the form with Salahuddin's first and last name and "turned it in incomplete with no signature, date or housing information." *Id*. As a result, Ms. King prevented Salahuddin from "being allowed to attend congregational prayers at (Jumu'ah) services, fast the month of Ramadan, attend daily study/worship sessions that are only available during the month of Ramadan & attend the celebratory (Eid ul Fitra) prayer for the end of Ramadan available to other Muslims." *Id*. With regard to his claims, Salahuddin asserts that he submitted two written complaints and one attempted regular grievance about attending Ramadan.

## III. DISCUSSION

### A. Standard of Review – Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

*Pro se* complaints are afforded a liberal construction and are held to a lower standard than pleadings drafted by lawyers. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction is particularly important when *pro se* complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021).

Defendants moved to dismiss Claims 1, 4 and 6 and Claim 2, to the extent Salahuddin is seeking damages. I will discuss each claim in turn.

*Claim 1 – VDOC violated Salahuddin's First Amendment Rights by enforcing VDOC OP 841.3*

Salahuddin brought a § 1983 claim against VDOC, alleging a violation of his rights to free exercise of his Muslim religious beliefs under the First Amendment. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

However, states and state agencies are not amendable to suits for damages. The Eleventh Amendment grants each state immunity from suit in federal court by citizens of another state. Const. Amend. XI. The Supreme Court has expanded the scope of immunity in holding that sovereign immunity bars suit in federal court by a citizen against their own state. *Hans v. Louisiana*, 134 U.S. 1 (1890). Accordingly, unless immunity is waived by the state or abrogated by Congress, states and state agencies are immune from suits for damages. *Biggs v. North Carolina Dept. of Public Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (quoting *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019)). Congress did not abrogate state sovereign immunity by enacting § 1983. Although officials are subject to suit for damages in their personal capacity, "[n]either a state nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Defendants argue that VDOC must be dismissed because, as a state agency, it is not subject to suit in an action for damages under § 1983. I agree. VDOC is "immune from suit as an arm of Virginia." *Johnson v. McCowan*, 549 F. Supp. 3d 469, 475 (W.D. Va. 2021). Because VDOC is an arm of the state entitled to sovereign immunity, Claim 1 against VDOC is dismissed.

*Claims 2, 4, and 6 – Damages are unavailable under RLUIPA*

Salahuddin contends that the Defendants violated his religious freedom statutory rights under RLUIPA. He seeks injunctive relief and damages against VDOC (Claim 2) and damages only against Snow and King (Claim 4 and 6, respectively).

Salahuddin cannot recover monetary damages against defendants. "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA." *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). In addition, Salahuddin cannot recover damages against defendants in their individual or official capacities for a violation of RLUIPA. *Rendelman v. Rouse*, 569 F.3d 182, 187-89 (4th Cir. 2009); *Sossamon*, 563 U.S. at 285-86. As RLUIPA does not authorize claims for damages, Claims 4 and 6 must be dismissed in their entirety and Claim 2 must be dismissed to the extent that it requests damages.

**B. Standard of Review – Motion for Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.' " *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). To

withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson*, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

*Exhaustion of Administrative Remedies*

Defendants assert that they are entitled to summary judgment as to Claims 2, 3 and 5 because Salahuddin failed to exhaust his administrative remedies. Salahuddin disagrees, arguing that administrative remedies were constructively unavailable to him because RNCC staff would not respond on his timeline. Having reviewed the record and the parties' submissions, I find that the defendant's partial summary judgment must be granted.

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] ..., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The applicable rules for administrative exhaustion are "defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal for "proper exhaustion." *Id.*

An inmate's failure to exhaust is an affirmative defense that a defendant has the burden to prove. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. *See*, *e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

In support of their exhaustion defense, Defendants have submitted affidavits from B. Wagner, Operations Manager at RNCC, and J. McBride, Operations Management Analyst at RNCC, VDOC OP 866.1 – Inmate Grievance Procedure, and Salahuddin's grievance records. VDOC OP 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally. He must normally document this informal resolution effort by filing an informal complaint form. Prison staff then provides the inmate with a written response on the informal complaint form and returns it to him within fifteen days. The inmate can then initiate the next step under OP 866.1—a regular grievance, with the informal complaint attached. If the inmate does not receive a response to his informal complaint within 15 days, he may, nevertheless, file a regular grievance form, attaching his receipt as evidence that he filed an informal complaint.

A regular grievance must be filed within 30 days of the occurrence about which it complains. Only one issue may be addressed per grievance. If a grievance does not meet the filing requirements of OP 866.1, it is returned to the inmate within two working days from the date of receipt, stating the reason for return on the intake section of the grievance form. Among other things, a regular grievance may be rejected at intake for raising more than one issue, expired filing period, repetitive claim, insufficient information, or making a request for services

instead of grieving a specific event or issue that affected the grievant. The inmate may correct the deficiency and resubmit the grievance, or he may appeal the intake decision to the regional ombudsman. If the regular grievance does not result in intake into the grievance process, the issue must be resubmitted in accordance with OP 866.1 for acceptance. However, appealing the intake decision does not satisfy the exhaustion requirement.

Once a regular grievance is properly filed, there are three levels of review. Level I reviews are conducted by the Warden or Superintendent of the facility. If the inmate is dissatisfied with the Level I determination, he may appeal to Level II, which are conducted by the Regional Administrator, Health Services Director or Chief of Operations for Classification and Records, depending on the issue. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts the review. The time limit for issuing a Level I response is 30 days; for Level II and III, it is 20 days. Expiration of the time limit without issuance of a response at any stage of the VDOC grievance procedure normally qualifies the grievance for appeal to the next level of review, unless officials are granted an extension. An inmate meets the exhaustion requirement only when a Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level of appeal without satisfactory resolution of the issue. Exhaustion is mandatory prior to initiating litigation by the inmate. All VDOC inmates are oriented to the grievance policy when initially received at VDOC as well as every time they are transferred to a new facility. Defendants included Salahuddin's signed acknowledgement form indicating that he received the inmate grievance procedure among other things as part of his orientation.

Defendants offer the following evidence in support of their motion, based on the RNCC grievance department's records. On January 28, 2025, Salahuddin submitted a written complaint stating that he had been transferred to RNCC on January 14, 2025, and put in a request form to attend Jumuah services, and he was told to wait until April when open enrollment occurred. He requested to be added to the master pass list because he was transferred when it was not open enrollment.

On February 11, 2025, Snow responded that during Salahuddin's orientation he was provided with a Request to Attend Religious Activity Form and he indicated on the form that he did not want to participate in a religious service and acknowledged that it would remain in effect until next open enrollment, which was April 2025. Snow further advised that Salahuddin was not enrolled in a religious service at his previous facility. A review of the record indicates that Salahuddin did not file a regular grievance or attempt to file a regular grievance for the complaint.

Salahuddin submitted another written complaint on February 10, 2025, to the grievance department, in which he stated that he put in a request form after arriving at RNCC to participate in Ramadan fasting and did not receive the four-hour agreement. He again requested to be placed on the Ramadan master pass list or be allowed to bring his trays back from chow hall.

On February 26, 2025, Snow again responded that during Salahuddin's orientation he was provided with a Request to Attend Religious Activity Form and he indicated on the form that he did not want to participate in a religious service and acknowledged that it would remain in effect until next open enrollment. Snow again advised that Salahuddin was not enrolled in a religious service at his previous facility. A review of the record indicates that Salahuddin did not file a regular grievance or attempt to file a regular grievance for the complaint.

According to the defendants, Salahuddin attempted to file a regular grievance on February 21, 2025, stating that after arriving at RNCC he put in a request form to participate in Ramadan fasting and asked to be added to the master pass list. On the same grievance, Salahuddin also requested to see mental health and to be provided with a section 1983 form. RNCC staff rejected the grievance as a request for services, advising that Salahuddin would have to wait until the next enrollment period. Salahuddin then appealed the intake decision, which was upheld on March 7, 2025. There is no indication that Salahuddin took any further steps to cure the deficiency and re-submit the grievance.

In response, Salahuddin argues that he was not required to exhaust administrative remedies because the administrative process was not "available" to him. The PLRA requires inmates to exhaust available administrative remedies prior to bringing lawsuits. 42 U.S.C. § 1997e(a). This demands "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). However, prison officials may not take unfair advantage of the exhaustion requirement, and a remedy becomes "unavailable" if "a prisoner, through no fault of his own, was prevented from availing himself of it." *See Moore v. Bennett*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court in *Ross* recognized three instances where an administrative remedy is considered "unavailable"; (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use;" (3) "when prison administrators' thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016). The

Fourth Circuit has held that "a grievance process is rendered 'unavailable' under the PLRA only if an inmate actually is prevented from using it." *Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021).

Salahuddin argues that the response to his attempted grievance, "to wait until next enrollment," indicates that RNCC staff "could or would not resolve the issue, making the grievance procedure unavailable for this issue being as though the next open enrollment was going to be 15 days after Ramadan ended." Dkt. 34. However, Salahuddin's argument is unconvincing and circular.

The Supreme Court has identified the benefits of requiring exhaustion as including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Salahuddin's claim that RNCC staff would not respond on his timeline does not provide a pass to evade the requirements of exhaustion, because despite this admitted setback, steps of the grievance procedure remained available to him. He just did not pursue them. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91 (2006).

Here, Salahuddin took no further steps to cure his rejected regular grievance after it had been upheld on appeal. "The requirement that inmates comply with all steps of a grievance policy is important because it gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss*, 19 F.4th at 621 quoting *Woodford*, 548 U.S. at 89 (internal quotation marks omitted). According to OP 866.1, if an inmate wishes to appeal the

intake decision on his grievance, he must appeal to the Regional Ombudsman within five days of receipt of the returned grievance, and the Regional Ombudsman "must make a determination to either uphold or overturn the intake decision" and there is no further review of appeal following the Regional Ombudsman disposition. Salahuddin cites no cases where a procedure is unavailable just because it takes time.

Furthermore, defendants submitted Salahuddin's signed form acknowledging receipt of materials at orientation, including the inmate grievance procedure VDOC OP 866.1. He has been through at least two orientations regarding VDOC OP 866.1, once upon initial entry and at least once again when he transferred to RNCC. Additionally, the sheer volume of grievances Salahuddin submitted between December 1, 2024 and November 20, 2025 clearly demonstrate his knowledge and familiarity with the grievance procedure. Defendants also submitted a form indicating that Salahuddin refused to sign his Request to Attend Religious Activity Form, which included an acknowledgement that if he wanted to change after the orientation, he would have to wait until the next enrollment period.

In response, Salahuddin offers only his conclusions and naked assertions against the defendants, including that RNCC staff forged the form and intentionally failed to add him to the master pass list. Yet, Salahuddin never once raised the issue until now. At bottom, Salahuddin's actions did not follow or complete the steps of the established VDOC grievance procedure (informal complaint, regular grievance, and available appeal(s) to Level II or III) as required for "proper exhaustion" and compliance with § 1997e(a). *Woodford*, 548 U.S. at 90.

Accordingly, I find that Salahuddin did not exhaust his administrative remedies, as required, prior to filing suit, and I will grant the defendants' partial motion for summary judgment as to Claims 2, 3 and 5.

## IV. CONCLUSION

For the reasons stated, the court concludes that the Defendants' partial Motion to Dismiss and partial Summary Judgment Motion are granted. A separate order will be entered.

The clerk will send a copy of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendants.

Enter: November 24, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge